## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| OAK STREET MORTGAGE, LLC f/k/a ) | |
| CRESLEIGH BANCORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No. 3:06-CV-0491 |
| v. ) | |
| ) | |
| FUNDZ R US, INC. d/b/a TRI-STATE ) | |
| MORTGAGE, INC.; PROPERTY GROUP, ) | |
| L.L.C.; PROGRESSIVE LAND TITLE OF ) | |
| INDIANA, LLC; BRENDA C. BUCK; ) | |
| MICHAEL SHENEMAN; JEREMIE ) | |
| SHENEMAN; KARL NEWBOURNE; ) | |
| THE TITLE SEARCH COMPANY; ) | |
| KAREN HAVERLAND; AMBER ) | |
| DUTTON-GWINN; NICOLE ) | |
| SMETANKA; TODD DECKER; EDGIN ) | |
| RESIDENTIAL APPRAISALS; BOBBY ) | |
| EDGIN; HARRY A. WYMAN; ) | |
| APPRAISAL CONNECTION, L.L.C.; ) | |
| ROBERT F. KNECHT, ) | |
| ) | |
| Defendants. ) | |
| -------------------------------------------------------) | |
| ) | |
| FUNDZ R US, INC.; BRENDA C. BUCK, ) | |
| ) | |
| Cross-Claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| EZZELL INCORPORATED d/b/a ALLIED ) | |
| APPRAISAL GROUP; MICHAEL ) | |
| SHENEMAN; EDGIN RESIDENTIAL ) | |
| APPRAISALS; BOBBY EDGIN; ) | |
| HARRY A. WYMAN; APPRAISAL ) | |
| CONNECTION LLC; ROBERT F. ) | |
| KNECHT; JEREMIE SHENEMAN, ) | |
| ) | |
| Cross-Defendants. ) | |
| ---------------------------------------------------------| |

**OPINION AND ORDER**

Plaintiff Oak Street Mortgage lost a substantial amount of money when it made loans secured by mortgages based on bogus loan applications, or so it claims in a complaint filed in this Court.  Here is what is alleged to have happened: In 2001, Oak Street entered into an agreement with Defendant Tri-State Mortgage, Inc. to underwrite residential mortgage loans from Tri-State to approved real estate buyers.  According to Oak Street's complaint, five of the loans that it made in 2003 were based on inflated real estate appraisals, false information about the borrowers, and incorrect or false information about the titles.  Each of the purchasers subsequently defaulted on the loans, and Oak Street was left holding the bag.  Oak Street alleges that Tri-State, the title companies, the appraisers of each property, and the property manager of the five properties all engaged in a scheme to defraud Oak Street.[1]

The sole basis for federal jurisdiction is a vast RICO claim brought against all of the defendants by Oak Street.  *See* 18 U.S.C. § 1961 et. seq.  In addition to the RICO claim, Plaintiff also brought a slew of state law claims against each defendant.   Harry A. Wyman, one of the appraiser defendants, and Property Group, L.L.C., the property manager, move to dismiss the RICO claims against them.  They argue that, once the RICO claims are dismissed, the Court should dismiss them for lack of subject matter jurisdiction.  For the reasons that follow, the Court dismisses Oak Street's RICO claim against Wyman and Property Group without prejudice.  However, given that we are allowing Plaintiff the opportunity to replead its RICO claim against the moving Defendants, and since several other Defendants have answered the RICO claim,

---

[1] Plaintiff initially sued the property buyers (David Doolittle, Steven Reeves, Curtis Turner, Renate Turner, and Kenneth Hoops), but dismissed them pursuant to Federal Rule of Civil Procedure 41(a)(1)(i).  Plaintiff has also dismissed one of the appraiser defendants, Ezzell Incorporated d/b/a Allied Appraisal Group.

dismissal of the pendent state-law claims is premature.[2]

## I.  BACKGROUND

According to the complaint, in 2001, Oak Street entered into a Broker Agreement with Tri-State Mortgage by which, from time to time, Tri-State would offer Oak Street the opportunity to underwrite and close various residential mortgage loans that Tri-State had originated and brokered.  (Compl. ¶ 27; Compl. Ex. A at 2.)  Under the agreement, Tri-State warranted that all information and documentation submitted to Oak Street in a loan file would be true and accurate.  (Compl. ¶ 31.)  Among the loans that Tri-State submitted to Oak Street were loans for five South Bend properties, specifically, 520 Madison Street, 1022 Huey Street, 133 South Illinois Street, 1033 North Brookfield Street, and 1517 Kendall Street.  (*Id*. ¶¶ 58, 76, 94, 111, 129.)

Oak Street alleges that each of the five loan packages suffered from various flaws, namely, false and/or negligently inflated appraisals on the mortgaged property that served as security for the loans; fictitious employment, income, and asset information from the borrowers; and "failure to confirm the source of cash payments made by borrowers at settlement, where such cash payments were excessive in light of the borrowers' income and assets." (*Id*. ¶ 38.) According to Oak Street, these flaws were part of a mortgage fraud scheme by which a broker finds houses at "bargain-basement prices" and induces aspiring landlords to buy them at inflated

---

[2] Tri-State, along with its owner, Brenda C. Buck, filed cross-claims against the appraiser defendants, among others, alleging that, if the appraisals were faulty, the appraiser defendants breached their duties to Tri-State. Wyman also moves to dismiss Tri-State and Buck's cross-claim against him.  Since that motion was filed, Tri-State and Buck have notified the Court of their respective bankruptcy petitions.  [DE 120.]  Their bankruptcy filings trigger an automatic stay of judicial proceedings against them, *see* 11 U.S.C. § 362(a), and therefore, the Court will refrain from ruling on Wyman's motion to dismiss the cross-claim until the stay has been lifted.

prices.  (*Id*. ¶¶ 40-42.)  In this case, the sellers and brokers of each property then allegedly paid each prospective buyer $2,000 per property, money which created an illusion that the borrowers had "seasoned funds," and were thus not overextending themselves by undertaking the mortgage.  (*Id*. ¶¶ 43-44.)  Then, by having appraisers provide inflated appraisals of the property and by obtaining faulty settlement statements from title companies, Tri-State was able to submit mortgage loan packages to Oak Street to obtain mortgage loans that exceeded both the properties' true value and the borrowers' ability to repay.  (*Id*. ¶¶ 50-52.)  Although Oak Street ended up selling the loans to other financial services companies, Oak Street claims that, after the borrowers defaulted, it had to repurchase the loans and reimburse those companies due to Defendants' misrepresentations and/or fraud.  (*Id.* ¶¶ 67-70, 85-88, 103-06, 120-23, 138-41.)

Specifically with respect to the moving Defendants, Plaintiff claims that Wyman's appraisals of the Madison Street and South Illinois Street properties were "intentionally defective and not performed in accordance with" industry standards or standards set by the State of Indiana.  (*Id*. ¶¶ 73, 109.)  The complaint enumerates several specific "misrepresentations and/or evidence of fraud" in each of the appraisals.  These include inflated predominant value in the neighborhood around the Madison Street property, incorrect representation of neighborhood land use around the Madison Street property, inflated appraisal of the Illinois Street property, and improper valuation of the Illinois Street property using overly rosy comparable sales data when data was available for sales that were more proximate to the Illinois Street property.  (*Id*. ¶¶ 72, 108.)  As against Wyman – in addition to the RICO claim (Count X) – Plaintiff asserts claims of fraud (Count IV), negligent misrepresentation (Count V), breach of fiduciary duty (Count XI), negligence (Count XII), civil conspiracy (Count XIV), unjust enrichment (Count XV), conversion (Count XVI), deception and mischief (Count XVII), and fraud on a financial

4

institution (Count XVIII).

The complaint is somewhat nebulous with respect to the specific role of Property Group. Plaintiff alleges that Property Group was the property management company for the five properties prior to their sale. (*Id.* ¶ 4.) Further, the buyers of the Madison Street and Huey Street properties were told that the properties were already being rented and managed by Property Group (*Id.* ¶¶ 42, 89) even though, in reality, there were no viable rental opportunities for any of the properties. (*Id.* ¶ 45.) Plaintiff alleges that Property Group received large payments that show up, without explanation, on the settlement statements for the Madison Street and the Huey Street closings. (*Id.* ¶¶ 71, 89.) Plaintiff asserts that these payments are evidence of misrepresentations or fraud. Against Property Group, Plaintiff asserts violations of RICO (Count X), civil conspiracy (Count XIV), unjust enrichment (Count XV), conversion (Count XVI), deception and mischief (Count XVII), and fraud on a financial institution (Count XVIII).

## II.  DISCUSSION

Wyman and Property Group filed motions to dismiss the RICO claims against them. Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a motion to dismiss, a district court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Moranski v. General Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005). Federal complaints plead claims rather than facts. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).

**A. Motion to Dismiss for Failure to State a Claim**

Plaintiff claims that all of the Defendants violated the RICO statute which provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To state a claim under § 1962(c), a RICO plaintiff must show the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted). The two moving Defendants claim that Plaintiff inadequately pled the conduct, enterprise, and pattern elements but we focus only on the conduct and pattern elements below.[3]

**1. Conduct**

The Supreme Court has held that the phrase "to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs" requires "*some* part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). In *Reves*, the Court held that an outside accounting firm could not be held liable under § 1962(c) for incorrectly valuing a farm cooperative's assets on the cooperative's financial statements, because it did not participate directly or indirectly in the conduct of the cooperative's affairs. *Id*. at 185-86. The Court held that "it is clear that Congress did not intend to extend RICO liability under § 1962(c) beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity." *Id*. at 184. But the Court also commented that "[a]n enterprise is

---

[3] Although some of the moving Defendants' arguments relate to the sufficiency of the RICO claim more broadly, not just the allegations regarding Wyman and Property Group, the Court confines its ruling in this Order to the moving Defendants.

'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id.*

The Seventh Circuit has held that *Reves* requires a RICO plaintiff to plead sufficient facts to meet the "operation or management" test with respect to each defendant. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). In *Goren*, the court upheld dismissal of a complaint that did not contain "any factual allegations that would lead to the conclusion that any of these defendants were involved in directing the affairs of . . . the alleged enterprise." *Id*. ("[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself.").

By contrast, a complaint can survive a motion to dismiss if it alleges, in essence, that defendants were "lower-rung participants in the enterprise who are under the direction of upper management." *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc*., 62 F.3d 967, 977 (7th Cir. 1995) (quotation omitted). In *MCM Partners*, the Seventh Circuit distinguished *Reves*, in which the defendant accountants were plainly "outsiders" to the criminal enterprise, from a situation in which two defendant companies were alleged to be a part of an enterprise-in-fact, and were alleged to have undertaken the predicate acts of racketeering "at the direction of" the enterprise's managers. *Id.* at 978. Even though the two defendants were minor players in the enterprise, they "participate[d] in . . . the conduct" of the enterprise because they "knowingly implemented management's decisions" and played a vital role in enabling the enterprise to achieve its goals. *Id*. at 979.

In this case, Oak Street does not specifically allege that one of the Defendant companies was the RICO enterprise; rather, it alleges that, collectively, "Defendants were an enterprise[.]"

7

(Compl. ¶ 204.)  Plaintiff thus evidently intends to allege an association-in-fact enterprise.  18 U.S.C. § 1961(4) ("'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or *group of individuals associated in fact* although not a legal entity") (emphasis added).  But Plaintiff falls short of alleging that Wyman and Property Group participated in the operation or management of the enterprise.  *Reves*, 507 U.S. at 179.  All that Oak Street has alleged of Wyman is that he provided real estate appraisals that were the product of negligence or fraud.  Even if these assertions are true, absent allegations of operation or management of the scheme, Wyman cannot be held liable under RICO.  *See Union Fed. Bank v. Howard*, 2005 WL 2031060, at *3 (N.D. Ind. Aug. 23, 2005) (dismissing amended complaint alleging that defendant real estate appraiser not only provided false and misleading appraisals, but also performed other administrative tasks for the enterprise; "Plaintiff has again tacitly failed to allege that Sterling exerted control over the enterprise, whether as upper management, a lower-rung participant under the control of some upper management, or in some other way."); *Fidelity Fed. Sav. and Loan v. Felicetti*, 830 F. Supp. 257, 259 (E.D. Pa. 1993) (granting motion for summary judgment for defendant real estate appraisers who provided misleading or fraudulent information but did not participate in operation or management of defendant enterprise).

      Moreover, the complaint fails to allege any specific wrongdoing at all on the part of Property Group, let alone that Property Group knowingly directed the scheme or knowingly acted at the direction of others.  On the face of the complaint, it is unclear whether the moving Defendants were integral participants in the conduct of the enterprise, or whether they essentially served as "contractors" to the enterprise.  Therefore, the complaint fails to state a RICO claim against Wyman or Property Group.

**2. Pattern**

For the pattern element to be satisfied, a plaintiff must not only allege two acts of racketeering activity within ten years, but must also show that those acts were related and continuous. *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 236-43 (1989). In other words, "the alleged acts of wrongdoing must not only be related, but . . . must 'amount to or pose a threat of continued criminal activity.'" *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (quoting *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1002 (7th Cir. 2004) (internal quotation omitted)).

In *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115 F.3d 1332 (7th Cir. 1997), the Seventh Circuit described a paradigm of a RICO pattern that meets the continuity plus relationship requirement:

> [It] would be the case of a person who controlled a company and used the mails to progressively fleece an elderly widow – first soliciting an investment of her savings in a Ponzi scheme sponsored by the company, then urging her to sell her furniture and invest her proceeds in the scheme, then inducing her to take out a second mortgage on her house to enable a further investment in the scheme, the whole campaign unfolding over several years and leaving her at the end destitute.

*Id.* at 1338. However, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy" RICO's continuity requirement. *H.J., Inc.*, 492 U.S. at 242. Continuity can be established by alleging "a closed period of repeated conduct," known as a "closed-ended" period of racketeering. *Id.* at 241 (quotation omitted). But if a plaintiff brings a RICO action before he can establish that racketeering activity is long-term in nature, continuity can be shown by demonstrating "past conduct that by its nature projects into the future with a threat of repetition," or an "open-ended" period. *Id.* at 242.

In this case, Plaintiff has not alleged an open-ended scheme, because it alleges no threat

of ongoing harm.  The threat of continuity of an open-ended scheme exists when the plaintiff can show "(1) a 'specific threat of repetition,' (2) that the 'predicate acts or offenses are part of an ongoing entity's regular way of doing business,' or (3) that the defendant operates a 'long term association that exists for criminal purposes.'"  *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1023 (7th Cir. 1992) (quoting *H.J., Inc.*, 492 U.S. at 242-43).  The complaint does not allege that the property-flipping scheme is ongoing, that it represents Defendants' regular way of doing business, or that Defendants operate a long-term association for the purpose of engaging in criminal activity.

In determining whether a plaintiff has alleged closed-ended continuity, courts in this Circuit look to the following factors:  1) the number and variety of predicate acts and the length of time over which the acts were committed; 2) the number of victims; 3) the presence of separate schemes; and 4) the occurrence of distinct injuries.  *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986).  In this case, the events that gave rise to this action took place between March 2003 to January 2004 – about eleven months.  Although there is no bright-line rule with respect to duration, this is a relatively short period of time for a RICO scheme.  *See, e.g., Vicom, Inc. v. Harbridge Merchant Servs. Inc.*, 20 F.3d 771, 780 (7th Cir. 1994) ("[A] time frame of less than nine months likely does not satisfy the duration requirement.  In fact, none of our cases has held that such a short time frame satisfies the durational aspect of closed-ended continuity."); *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 673 (7th Cir. 2005) (no continuity where campaign contributions were made over two-year period); *J.D. Marshall Int'l v. Redstart, Inc*., 935 F.2d 815, 821 (7th Cir. 1991) (no continuity where scheme lasted thirteen months); *U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261, 1266 (7th Cir. 1990) (no continuity where real harm arose at outset of scheme, when contract was

signed, and various incidents of mail and wire fraud occurred for eighteen months thereafter).

Further, the only victim of the scheme mentioned in the complaint is Plaintiff. Although Oak Street points out in its response that a complaint may establish a pattern by alleging harm to third-parties (Resp. at 15), this complaint does not does not allege such harm. Plaintiff's suggestion that other lenders were harmed by the scheme only appears in its response brief, not in its complaint. (Resp. at 15.) At most, the complaint alleges that one of the borrowers, Steven Reeves, obtained loans for multiple properties from other lenders, not that those other lenders were harmed by the scheme at issue. (Compl. ¶ 43.) Moreover, Plaintiff can hardly argue that the borrowers in this scheme, who were eventually foreclosed upon, were harmed, because the RICO count is directed toward all defendants – including, initially, the borrowers themselves.

Third, the complaint only alleges that Defendants engaged in a single scheme. The Supreme Court has held that a plaintiff need not prove multiple schemes to show a pattern for purposes of RICO. *H.J., Inc.*, 492 U.S. at 237. Yet "'it is not irrelevant, in analyzing the continuity requirement, that there is only one scheme.'" *Roger Whitmore's*, 424 F.3d at 674 (quoting *Sutherland v. O'Malley*, 882 F.2d 1196, 1204 (7th Cir. 1989)). Oak Street contends that, while a single scheme is sufficient, its complaint "alleges far more":

- That [Defendants] engaged in a scheme which involved [at a minimum] five . . . separate properties;
- That said scheme involved multiple violations of at least three predicate acts of racketeering activity: mail fraud, wire fraud and bank fraud;
- That said scheme harmed other victims;
- That said scheme is capable of repetition.

(Resp. at 15.) However, all of these assertions only underscore that the complaint alleges *one*

11

*scheme* involving several properties and numerous predicate acts.

Finally, the complaint does not establish that Plaintiff has suffered a series of distinct injuries. Although the injury might have been felt at distinct times (perhaps at the time each borrower defaulted, or at the time that each assignee of the loan pursued Plaintiff under the recourse provisions of the loan agreement), all of the harm stemmed from a single property-flipping scheme that arose out of a single contract with Tri-State. "[I]dentical economic injuries suffered over the course of two years stemming from a single contract were not the type of injuries which Congress intended to compensate via the civil provisions of RICO." *Vicom, Inc.*, 20 F.3d at 782 (quoting *U.S. Textiles*, 911 F.2d at 1269).

On balance, having applied the *Morgan* factors, the Court finds that the complaint does not meet the continuity requirement for establishing a pattern under RICO.

## B. Failure to Plead Fraud With Particularity

Wyman and Property Group also contend that Oak Street failed to plead predicate acts of fraud with adequate particularity.[4] Federal Rule of Civil Procedure 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) extends to allegations of fraud in a civil RICO complaint. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). "[A] RICO plaintiff must, at a minimum, describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Id*. Moreover, "in a multiple defendant case, Rule 9(b) requires a RICO

---

[4] The Court expresses no opinion here with respect to the adequacy of fraud allegations against any of the non-moving Defendants.

plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren*, 156 F.3d at 726.  The Seventh Circuit has historically "rejected complaints that have 'lumped together' multiple defendants" in a fraud scheme.  *Vicom, Inc.*, 20 F.3d at 778.

Oak Street's fraud allegations are deficient with respect to Property Group.  The complaint generally alleges that all defendants have "directly and indirectly conducted and participated in the conduct of the enterprise's affairs."  (Compl. ¶ 214.)  But this kind of generic allegation does not meet the Rule 9(b) standard.  Plaintiff alleges that the buyers of the Madison Street and Huey Street properties were told that the properties were already being rented and managed by Property Group, even though, in reality, there were no viable rental opportunities for any of the properties.  (Compl. ¶¶ 42, 45, 89)  But Plaintiff does not allege that Property Group itself made any misrepresentations or performed any other predicate acts.

The body of the complaint is more specific with respect to the actions of Wyman.  It alleges that Wyman deliberately inflated two appraisals so that Oak Street would loan more than the property was worth.  It describes the flaws in both the appraisals.  The appraisals themselves are attached to the complaint.  (Compl. Ex. B, F.)  The Court concludes that the complaint, though failing to connect Wyman to the conduct of the RICO enterprise as discussed above, does describe Wyman's predicate acts of fraud with sufficient specificity and detail.  *Slaney*, 244 F.3d at 597.[5]

---

[5] Plaintiff alleges bank fraud as one of the racketeering acts. It's worth noting that the bank fraud statute only protects federally chartered or insured financial institutions.  *United States v. Jacobs*, 117 F.3d 82, 93 (2d Cir. 1997).  Therefore, to support a RICO claim for violations of 18 U.S.C. § 1344, Plaintiff must be a federally chartered or insured financial institution.  The complaint does not make clear whether Oak Street meets this requirement.

13

**C. Dismissal of Pendent State-Law Claims**

Finally, Defendants argue that the dismissal of Plaintiff's RICO claim against them militates toward dismissal of Plaintiff's state-law claims for lack of subject matter jurisdiction. But dismissal of the pendent state-law claims against the moving Defendants would be premature.  Because the other Defendants have not moved to dismiss the RICO claim and the Court has not undertaken that analysis *sua sponte*, Plaintiff's RICO claim survives with respect to those Defendants.  In addition, the Court is allowing Plaintiff the opportunity to amend its complaint to state a viable RICO claim against the moving Defendants.  The state and federal claims derive from a "common nucleus of operative fact," such that Plaintiff "would ordinarily be expected to try them all in one judicial proceeding."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367(a).  Therefore, it is appropriate for the Court to continue to exercise its supplemental jurisdiction over the state law claims.

However, Court may choose to review *sua sponte* the RICO allegations in any amended complaint, and should an amended complaint fail to state a RICO claim against any of the Defendants, the Court will dismiss the RICO claim with prejudice and decline to exercise supplemental jurisdiction over the state-law claims.

### III.  CONCLUSION

For the foregoing reasons, Defendants Property Group L.L.C. and Harry A. Wyman's motions to dismiss Plaintiff Oak Street Mortgage's RICO claims [DE 59, 62] are **GRANTED**; Count X of Plaintiff's complaint is dismissed without prejudice with respect to Property Group and Wyman.  Plaintiff shall have 30 days to amend the complaint to assert sufficient RICO allegations.

**SO ORDERED.**

ENTERED: July 2, 2007

> s/ Philip P. Simon
> PHILIP P. SIMON, JUDGE
> UNITED STATES DISTRICT COURT