UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| OAK STREET MORTGAGE, LLC f/k/a CRESLEIGH BANCORP., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| MICHAEL SHENEMAN, | ) ) |
| Defendant. | ) |

3:06-CV-491 PPS

## OPINION AND ORDER

Before the Court is Plaintiff Oak Street's Motion to Enforce the Settlement Agreement Between Oak Street and Defendant Michael Sheneman. [DE 238.] For the following reasons, Oak Street's motion is denied.

## BACKGROUND

First, the facts. Plaintiff Oak Street Mortgage, LLC brought this action almost four years ago alleging that 22 defendants were part of a vast mortgage fraud scheme. Oak Street asserted claims of RICO, breach of contract, fraud, negligent misrepresentation, breach of fiduciary duty, negligence, civil conspiracy, unjust enrichment, conversion, deception and mischief, and fraud on a financial institution. In July 2007, I dismissed the RICO count without prejudice against two of the defendants [DE 122], and Oak Street filed an amended complaint. Since then, 21 of the 22 defendants have either been voluntarily dismissed or settled (for what appears to be small amounts).[1] The only remaining defendant is Michael Sheneman.

---

[1] Interestingly, despite the fact that many of the defendants filed motions to dismiss the amended complaint, Oak Street did not respond to any of these motions, instead seeking

-1-

Oak Street began negotiating a potential settlement with Sheneman's attorney, Donald Wertheimer, in the spring of 2009. At that time, Wertheimer represented Sheneman and three other defendants, and the settlement negotiations involved all four defendants. In April 2009, Wertheimer emailed Oak Street attorney, Jon Mattingly, with a potential settlement offer. Wertheimer stated that "[w]ith extreme difficulty" he "finally received authority" from his clients to settle for $2,000 each; "[h]owever, they will need time to pay it." [DE 239-1.] Wertheimer proposed that if any defendant did not pay Oak Street $2,000 within 120 days, that defendant would owe $3,000. A month later, Wertheimer told Mattingly "we are still attempting settlement" and his previous proposal was "all the authority I could squeeze out of the four defendants and that was a considerable task." [DE 239-2.] That day, Oak Street filed a status report with the Court stating that the parties reached a "tentative settlement in principle." [DE 201.]

Eight months passed, and the parties took little action, though they continued to haggle over the amount of time the defendants had to make payments, with proposals ranging from 14 to 120 days. As a result, in January 2010, I held a status conference and ordered Oak Street to file a weekly status report with the Court until the parties finalized a settlement. [DE 209.] About a month later, Wertheimer wrote to Mattingly and said, "notwithstanding the passage of time," he "should be able to get [the settlement agreement] signed by all four" defendants if the payment deadline is 90 rather than 14 days. [DE 239-6.] Mattingly agreed to the provision, but noted, "I understood before that you were having difficulty contacting your clients at all." [*Id.*]

Over the next three months, Mattingly represented to the Court that Wertheimer was in

---

extensions and pursuing settlement.

the process of obtaining signatures from all his clients approving the settlement agreement. But during that time, Wertheimer stopped responding to Mattingly's calls or emails and filed nothing with the Court. Frustrated with another span of inactivity, I held yet another status conference in May 2010. At the conference, Wertheimer explained that the remaining defendants had not responded to his communications to them and "he did not know what else to do." [DE 232.] Wertheimer also stated that his clients had not agreed to any settlement offer. [*Id*.] Shortly thereafter, the other three defendants agreed to settle.

Sheneman, however, refused to sign the agreement. According to Sheneman, he rejected all settlement proposals presented to him by Wertheimer and was clear that any settlement required his approval. [DE 246-2 ¶¶ 10-14 (Michael Sheneman Affidavit).] He repeatedly told Wertheimer that he did nothing wrong and would not settle unless he was given an opportunity to clear his name of any wrongdoing. [*Id*.] For example, Sheneman asserts that he received a settlement offer in May 2009 for $2,000, but refused to sign it because the proposal contained a confidentiality clause. [*Id*. ¶ 13.] Moreover, Sheneman claims he was increasingly frustrated with Wertheimer's representation. Sheneman was concerned by both the lack of discovery in the case and the lack of communication from Wertheimer. [*Id*. ¶ 16.] What's more, Sheneman repeatedly asked Wertheimer to file a motion to dismiss rather than pursue settlement, but none was filed. [*Id*. ¶ 15.]

As a result, following the May status conference, Sheneman retained new counsel. His new attorney immediately wrote to Oak Street and advised it to either dismiss the case or prepare for trial. Oak Street responded to the letter by filing this motion. In this motion, Oak Street moves to enforce the settlement agreement against Sheneman because Wertheimer had apparent

authority to settle the case, and Oak Street and Wertheimer agreed to all material terms.

## **DISCUSSION**

A settlement agreement is merely a contract between the parties and is thus governed by state contract law. *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). Under Indiana law, an attorney may bind his client to the terms of a settlement agreement if the attorney has actual or apparent authority to bind him, or if the principal subsequently ratifies the agreement. *Id.*; *Koval v. Simon Telelect, Inc.*, 693 N.E. 2d 1299, 1301 (Ind. 1998). "Apparent authority is the authority that a third person reasonably believes an agent possesses because of some manifestation from the principal." *Koval*, 693 N.E. 2d 1304; *Carr*, 89 F.3d at 331 (the principal's actions must give the third party "the reasonable impression" that the agent has the authority to settle on behalf of the principal). The existence of apparent authority must be communicated, either directly or indirectly, by the principal to the opposing party; communication by the agent does not create an apparent agency relationship. *Koval*, 693 N.E. 2d at 1304. Also, "apparent authority to settle is not conferred simply by the retention of an attorney though of course it may be conferred by other actions by the client." *Id.*; *see Thomas v. South Bend Cmty. Sch. Corp. Bd. of Trs.*, 2008 WL 1774958, at *7 (N.D. Ind. Apr. 15, 2008) ("[P]lacing an agent in a position to act and make representations which appear reasonable is sufficient to endow [the agent] with apparent authority.").

Oak Street argues that Sheneman's actions indirectly indicated to Oak Street that Wertheimer had apparent authority to settle on his behalf. Oak Street claims that Sheneman conferred authority by continually placing Wertheimer in a position to act on his behalf by using Wertheimer to file pleadings, conduct discovery, mediate, and negotiate a settlement. Oak Street

argues these "additional indicia of authorization" indicated that Wertheimer had apparent authority to settle the matter. [DE 247 at 4.]

The issue is thus whether Sheneman indicated to Oak Street that Wertheimer had authority to settle by placing Wertheimer in a position to conduct litigation on his behalf. Again, the law is clear that retention of an attorney, in itself, does not confer apparent authority. *Koval*, 693 N.E. 2d at 1304; *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000). And while "other actions" by the client may indicate apparent authority, this requires more than simply allowing an attorney to routinely conduct litigation. This point is made clear by *Bay v. Pulliam*, 872 N.E. 2d 666 (Ind. App. 2007). In *Bay*, the court found that a law firm did not gain apparent authority to settle by acting as the clients' attorney and engaging in settlement negotiations with the third party. The court held: "The mere fact that the [client] authorized the attorneys to enter into settlement negotiations and knew that such negotiations were being conducted is not a manifestation, either direct of indirect, that [the attorneys] had authority to approve a settlement." *Id*. at 668. Notably, the clients made no indication to the third party that the law firm had authority to settle aside from hiring the law firm as their agent and allowing it to conduct the litigation. *Id*. at 669.

Like *Bay*, Wertheimer's actions as Sheneman's attorney do not indicate that Wertheimer could bind Sheneman to an agreement without Sheneman's consent. *See Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 1000 (7th Cir. 2001) ("[A]n attorney's authority to settle will not be presumed"). The mere fact that Sheneman put Wertheimer in a position to conduct the litigation – by filing pleadings, conducting discovery, and negotiating a potential settlement – shows that Sheneman wanted Wertheimer to act in his role as attorney and nothing more. If this, in itself,

was enough to indicate apparent authority, the notion that "apparent authority to settle is not conferred simply by retention of an attorney," *Koval*, 693 N.E. 2d at 1304, would be meaningless. Indeed, it makes little sense to hold that retaining an attorney does not confer apparent authority, but that allowing an individual to perform in his role as attorney does. Thus, based on these facts, Sheneman did not indicate that Wertheimer had authority to settle on his behalf by allowing him to file pleadings, conduct discovery, and negotiate a potential settlement.

Indeed, Oak Street should have known that Wertheimer was not in a position to settle on Sheneman's behalf. While apparent authority must be manifested by the principal, not the attorney, *Koval*, 693 N.E. 2d at 1304, Wertheimer's communications with Mattingly made it clear that Sheneman *did not give* Wertheimer the authority to bind Sheneman without his express consent. For example, in negotiating the terms of a potential settlement, Wertheimer told Mattingly that "[w]ith extreme difficulty" he "finally received authority" to settle under specific terms, and noted, it was "all the authority I could squeeze out of the four defendants and that was a considerable task." [DE 239-1; DE 239-2.] (Oak Street apparently found those terms unacceptable.) Then, months later, Wertheimer explained that he "*should* be able to get [the settlement agreement] signed" if Oak Street agreed to extend the payment deadline. [DE 239-6 (emphasis added).] This language indicates that Wertheimer still needed his clients' approval before finalizing a settlement. And this accords with Sheneman's claim that he clearly expressed to Wertheimer that he had to approve any settlement agreement, and Wertheimer did not have authority, apparent or otherwise, to settle on his behalf.

Also, Oak Street claims that Sheneman's failure to object to its thirteen status reports, which were publicly available and stated that a settlement had been reached, "evidences [his]

-6-

understanding that a contract had been formed between the parties." [DE 239 at 9.] But these status reports only state that "Wertheimer has approved" the settlement terms and that he was in the process of obtaining signatures from his clients. [*See, e.g.*, DE 208, 211.] This does not show that Sheneman agreed to settle or that Wertheimer had authority to settle on Sheneman's behalf. And to the extent Oak Street is arguing that Sheneman ratified the agreement through his silence, Oak Street fails to show that Sheneman even had knowledge of these status reports. *See Beneficial Mortgage Co. of Indiana v. Powers*, 550 N.E. 2d 793, 796 (Ind. App. 1990) ("Knowledge of all the material facts by the person to be charged with the unauthorized acts of another is an indispensable element of ratification."). Yet, even if he did read Oak Street's filings, again, the reports fail to show that a final settlement had even been reached. So Oak Street's claim that Sheneman indicated his acceptance of the settlement by not objecting to Oak Street's status reports to the Court has no merit.

Finally, Oak Street argues "it is unclear what Oak Street could have done to be more diligent in ascertaining Wertheimer's authority." [DE 247 at 5.] But, conversely, what else could Sheneman have done to demonstrate that any settlement agreement required his express approval? Sheneman claims that he made it clear to Wertheimer that any settlement required his ultimate approval, and Wertheimer admitted that Sheneman had not agreed to settle. Oak Street presents no evidence that Sheneman communicated to Oak Street, directly or indirectly, that Wertheimer had authority to settle on his behalf. In the end, Oak Street hangs its hat on the fact that Wertheimer acted as Sheneman's attorney and negotiated on his behalf; but, again, without more, that is simply not enough to confer apparent authority. *See Bay*, 872 N.E. 2d at 669; *see also Higbee*, 253 F.3d at 1000.

Notably, Oak Street takes for granted that if Wertheimer had apparent authority to settle, the parties agreed to all material terms. But the parties never agreed on the timeline for payment, and it is far from clear this was a non-essential term. The parties negotiated the provision for over nine months. And, despite the rather insignificant amount of money at play, the timeline was clearly important to the defendants. *See Higbee*, 253 F.3d at 998 (finding a clause material because "[d]uring the negotiation, [the party] made it clear that she would not settle the case without such a clause"). In fact, even when the *attorneys* agreed to the 90 day timeline, Wertheimer stated only that his clients "should" agree to the provision, making it clear he needed their consent to finalize the agreement. In addition, both Oak Street and Sheneman acknowledge that the parties had not agreed on a suitable confidentiality agreement, a provision that, according to Sheneman, is a deal breaker. [*See* DE 239 at 4; DE 246-2 ¶ 13-14.] So even if Wertheimer had authority to settle at some point, the parties had not agreed to all material terms.

## CONCLUSION

Therefore, Plaintiff Oak Street's Motion to Enforce the Settlement Agreement Between Plaintiff and Defendant Michael Sheneman is **DENIED**. [DE 238.] The parties are **ORDERED** to complete any additional discovery by **September 1, 2010**. A Final Pretrial Conference/ Settlement Conference is hereby **SET** for **September 2, 2010 at 9:30 a.m., Hammond/Central Time**, with a trial date **SET** for **September 20, 2010 at 9:30 a.m., Hammond/Central Time**.

**SO ORDERED**.

ENTERED: August 3, 2010.

s/ Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT